(152 App. Div. 473.)

### PEOPLE v. GOLDFARB.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

1. RECEIVING STOLEN GOODS (§ 8*)—EVIDENCE.
　　Evidence *held* to justify a conviction of receiving stolen goods.
　　[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. §§ 15–18; Dec. Dig. § 8.*]

2. CRIMINAL LAW (§ 1137*)—APPEAL—RIGHT TO ALLEGE ERROR.
　　Accused could not complain of the use the jury was permitted to make of defendant's conviction of another offense, where his counsel objected to a correction at the instance of the district attorney.
　　[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3007–3010; Dec. Dig. § 1137.*]

3. WITNESSES (§ 323*)—IMPEACHMENT.
　　A witness for the people having evinced no hostile disposition, evidence of what the witness told the district attorney and concerning conversations between the witness and police officers was inadmissible, over defendant's objection.
　　[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1096; Dec. Dig. § 323.*]

4. WITNESSES (§ 366*)—INDUCEMENT TO TESTIFY—DURESS.
　　Where, in a prosecution for receiving stolen goods, one of the people's witnesses was shown to have been indicted for receiving from defendant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the stolen goods knowing of the larceny, it was improper to preclude defendant from showing why the indictment of the witness had not been tried, in order that he might show, if he could, under what inducement or duress the witness was testifying.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1183; Dec. Dig. § 366.*]

5. CRIMINAL LAW (§ 720*)—EVIDENCE—TRIAL—STATEMENT BY DISTRICT ATTORNEY.

Where, in a prosecution for receiving stolen goods, the proof of defendant's guilty knowledge was scant, and the chief witness for the people had been indicted for receiving from defendant the stolen goods, knowing of the larceny, it was error for the district attorney, during the examination of the witness, to state to the court: "We had to indict him and bring him to trial to get any information at all."

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1670, 1671; Dec. Dig. § 720.*]

6. RECEIVING STOLEN GOODS (§ 8*)—EVIDENCE.

Where, in a prosecution for receiving stolen goods, consisting of certain new Jenkins valves, the people showed that such valves were not bought and sold by the pound, as it was proved defendant sold the valves in question, defendant's evidence that there were metal dealers in Manhattan and elsewhere that dealt in such valves was not objectionable, as cumulative, but was admissible.

[Ed. Note.—For other cases, see Receiving Stolen Goods, Cent. Dig. §§ 15–18; Dec. Dig. § 8.*]

Appeal from Kings County Court.

Philip Goldfarb was convicted of receiving stolen property, and he appeals. Reversed, and new trial ordered.

Argued before HIRSCHBERG, BURR, THOMAS, CARR, and RICH, JJ.

Martin T. Manton, of Brooklyn (Benjamin M. Levy, of New York City, on the brief), for appellant.

James C. Cropsey, Dist. Atty., of Brooklyn (Herbert N. Warbasse and Hersey Egginton, Asst. Dist. Attys., both of Brooklyn, on the brief), for the People.

THOMAS, J. [1] The question is whether defendant, a dealer in old metal, was legally convicted of receiving on or about August 10, 1908, stolen brass valves, knowing that they had been stolen. Jacobs, whose store was 274 South Ninth street, Brooklyn, had a large quantity of such goods, and in August and later they were stolen, and the evidence amply shows that one Fein, a plumber, occupying a basement at No. 272 South Ninth street, and a wood or coal bin in the basement of No. 270, made an entrance into the cellar of Jacobs' building and stole the valves. The defendant admits that his wagon took metal in bags and loose from Fein's basement, although he denies that any new valves were included; but a person living in the building saw valves protruding from the bags. Fein was a tenant in defendant's building, which was subject to a mortgage for borrowed money and owned by Fein, and checks were introduced indicating payments by each to the other, which defendant stated were given for payments on the mortgage, or in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

connection with it. A large number of new brass valves were on three occasions in August sold by defendant to one Watson at 13 cents per pound, which was their market value as old metal or junk, but a relatively small portion of their value as new and usable material. These valves were in a large number taken by the police, and were found to be similar in style and make to those lost by Jacobs, and some of them were identified as Jacobs' valves by remembered and identifying defects. The evidence, carefully considered, sustains the finding that the valves were stolen by Fein from Jacobs, received by defendant, and sold to Watson.

But did the defendant know of the guilty possession of Fein? This question must be studied with care and answered with caution. Defendant and Fein were friends, and they lived in the same house. They had association in business transactions. Defendant's driver took the metal from Fein's basement. Defendant sold it, and is presumed to know what he sold, and that the large quantity of valuable valves, unused, apparently, were sold as raw material. He admitted that he had sold material to Watson, but denied that new valves were included. So he admittedly bought material of Fein, which was taken always in full day, with but one number intervening between the place of reception and the place of larceny. He sold and delivered openly. He admitted upon arrest sale of metals, but denied sale of new valves. If he knew that he sold this large number of new valves, his denial indicated concealment of guilty knowledge. But how could he but know that he had purchased, possessed, and sold so many new valves, some of them unwrapped? He dealt in plumbing supplies, including valves. Hence he could distinguish the new from the old; those suited for their primary purposes from those abandoned for sale as old or defective material; what was salable per item from those salable only per pound. There was evidence to sustain the conviction, but it is no more than sufficient. Hence the reception of the evidence and submission to the jury must be examined carefully, lest some error prejudiced the defendant.

[2] The appellant could complain of the use the jury was permitted to make of defendant's conviction of another offense, had not the defendant's counsel objected to the correction at the instance of the district attorney.

[3] But proof over defendant's objection of what the witness Watson had told the district attorney was justified by no apparent hostile disposition of the witness, and admission of the conversation between the witness and the police officers was equally incompetent, and I in vain seek justification for the question that Watson had declined to testify elsewhere on the ground that his evidence might tend to incriminate him, and that as a result of a conference at the district attorney's office the witness told the entire transaction between himself and Goldfarb and everything relating to these valves. Then he was asked whether as a result an indictment was found against Goldfarb. That question he did not answer, and the evidence respecting his appearance before the grand jury was not un-

der objection and exception by the defendant's counsel, theretofore unsuccessful in his attempts to stem the tide of such inquiry.

[4] But when the defendant's counsel sought to show why the indictment of the witness was not tried, he was precluded, although it might have shown under what inducement or duress Watson was testifying. So the people's witness was presented to the jury as a person accused by indictment of receiving from defendant these stolen goods, knowing of the larceny. There was no propriety in bringing in the extrajudicial matters. The witness had at one time bought some valves at auction, he stated, but he had fully explained that he had made the purchase of defendant; but his alleged fault indicating hostility was in not knowing definitely whether the valves sold one O'Brien came from that source.

[5] It was upon this that the district attorney advised the court that "we had to indict him and bring him to trial to get any information at all." The evidence of the people on the subject of the defendant's guilty knowledge was too scant to permit such prejudicial statement, and conversation between witness Watson and the prosecuting officials and police officer.

[6] There was other manifest error. The people showed that such valves were not bought and sold by the pound, and yet, when the defendant sought to show that there were metal dealers in Manhattan and elsewhere that dealt in Jenkins valves, he was precluded. It is no answer to show that the evidence was cumulative. It was an important consideration, and one that must have weighed heavily against the defendant in the minds of the jurors, that new Jenkins valves were sold as raw metal by the pound. A man in Jenkins Bros.' employment over defendant's legal protest was allowed to testify that he had never heard of these valves being sold by the pound save in the present case. But the defendant was not suffered to make counter proof. One ruling was error, and that was made against the defendant.

The judgment of conviction should be reversed, and a new trial ordered. All concur.